**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 04 CR 709 |
| | ) | |
| ROBERT COLLINS | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Robert Collins was indicted by a grand jury on three narcotics charges. Each of the charges alleged that on a particular date, Collins knowingly and intentionally distributed a specified quantity of a Schedule II controlled substance, specifically cocaine base in the form of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). On May 5, 2005, Collins pled guilty to all three charges. Before Collins entered his guilty plea, the parties explained to the Court that Collins desired to plead guilty to each of the charges but reserve the question of the specific Schedule II controlled substance involved:

> MR. YOUNG (defense counsel): ... [I]f I could, before we get into the factual basis, Mr. Collins' desire is to plead to the indictment but to reserve argument on the nature of the controlled substance and ask the Court to have a hearing at sentencing or prior to make a determination as to the nature of the controlled substance.
>
> THE COURT: Let me ask you this. When we get to the factual basis, what is the factual basis going to be as to what the substance was?
>
> MR. YOUNG: A Schedule 2 [sic] controlled substance is what he would admit to, and the issue is whether or not it's crack cocaine or not basically.
>
> MR. HOTALING (prosecutor): So going through my factual basis, what I intend to do is just to – at every point in time when we have this particular drug is to indicate a Schedule 2 controlled substance.

> THE COURT: All right. So, in other words, what you are saying is that the gravamen of the charge is the possession [sic] of a Schedule 2 controlled substance, and so he is pleading to that, and it can be determined at some later ponit what particular Schedule 2 controlled substance it was.

Tr. May 5, 2005 at 2-3. It was further explained that determination of whether the substance involved was crack cocaine would impact both the maximum and minimum offenses. *Id.* at 3-4.

During the plea colloquy, the Court explained to Collins that the sentence on the charges to which he was pleading guilty would depend on the nature of the substance involved: if it was crack cocaine, the maximum on each charge would be life imprisonment and the minimum would be ten years; if it was not crack cocaine, the maximum would be thirty years and there would be no mandatory minimum. *Id.* at 11.

The Court also explained to Collins, clearly and unequivocally, that he had the right to have the issue of the nature of the substance involved determined by proof that would have to establish beyond a reasonable doubt that the substance was crack cocaine:

> THE COURT: Now, you have a right to have the nature of the substance, in other words, what type of Schedule 2 controlled substance it is – you have the right to have that determined at a trial by a jury. Do you know that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: As I understand what you are doing here is you are going to be admitting that you distributed on each one of these dates the particular quantities of a Schedule 2 controlled substance, and you are going to leave it to be to decide later on, after hearing from both sides, what particular type of Schedule 2 controlled substance it was. Am I right about that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that when you are doing that, you are going to be asking me to decide it rather than a jury, and so it's just going to be up to me to make that decision? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand you have a right to have that decision made by a jury?

THE DEFENDANT: Yes, sir.

THE COURT: I am going to go through your right to a jury again more particularly, but I want to just focus on this one thing. Has there been a discussion of how the burden of proof is going to be determined?

MR. HOTALING: Your Honor, I think I was going to interject on that. I believe the standard at sentencing would be that you would be able to make those findings by a preponderance. So he would be waiving his right.

THE COURT: Let me just go through that part of it. If you were to go to trial, the jury would be told that they would have to determine each one of the things that the government has to prove by a standard of proof that is called beyond a reasonable doubt. In other words, the government would have to prove beyond a reasonable doubt each one of the things that they have to prove, and they would also have to prove that it was the particular substance they were talking about, crack cocaine, in order for you to be sentenced under those more serious sentencing provisions with the 10-year minimum and the life maximum.

Since you are going to be giving that to me to determine, it is going to be determined as a sentencing issue by a different standard, by what is called preponderance of the evidence. In other words, I am going to have to look at the evidence and decide whether it's more likely true than untrue that the substance is crack cocaine. The government will still have the burden of proof, but they will have to prove simply that it is more likely than not that the substance was crack, and they won't have to prove it beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Are you willing to give up your right to have that particular issue on each one of these charges determined by a jury, with the government being required to prove it beyond a reasonable doubt, and have me decide it instead?

THE DEFENDANT: Yes, sir.

*Id.* at 11-14. The Court thereafter heard and accepted Collins' guilty plea to the three charges.

Following entry of the guilty plea, the Court conducted an evidentiary hearing at which the government undertook to prove that the substance Collins had distributed was crack cocaine. We will discuss later the evidence adduced at the hearing. Following the hearing, the Court questioned the propriety of a guilty plea in which the defendant admits to some, but not all of the elements of an offense and agrees to a lower burden of proof as to the remaining elements. The Court requested further briefing. The government filed a brief in which it argued that the issue of the type of narcotic was a sentencing issue, not an element of the offense, and that a defendant may waive both judicial fact finding and application of the reasonable doubt standard. Collins filed a brief in which he argued that the government's burden of proof cannot properly be waived, and that even if it can, he "was misinformed and his waiver of the standard of proof was therefore not knowingly made." Dfdt. Suppl. Mem. at 3.

Since *Apprendi v. New Jersey,* 530 U.S. 466 (2000), any fact that subjects the defendant to a higher maximum sentence must be proven to a jury beyond a reasonable doubt. In a § 841 case, determination of whether the narcotic the defendant distributed was crack cocaine is such a fact. But that does not make the type of narcotic an element of a § 841 offense. As the government argues, the Seventh Circuit has held that "drug type and quantity remain sentencing issues," though the fact finder and the burden of proof have changed as a result of *Apprendi. See United States v. Knight,* 342 F.3d 697, 710 (7th Cir. 2003); *Horton v. United States,* 244 F.3d 546, 552 (7th Cir. 2001).

A defendant's rights under *Apprendi* – that is, his rights to have factors that increase a sentence determined by a jury, pursuant to the standard of proof beyond a reasonable doubt – are subject to waiver. In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 2541 (2004), the

4

Court made it clear that "nothing prevents a defendant from waiving his *Apprendi* rights." Though the notion of a defendant's waiver of the reasonable doubt standard of proof gives the Court pause, Collins has offered no compelling reason why this important right should be treated any differently from other equally important rights – such as the right to counsel and the right to trial by jury – that are unquestionably subject to waiver. *See Illinois v. Tovar,* 541 U.S. 77, 80 (2004) (right to counsel); *Faretta v. California,* 422 U.S. 806, 835 (1975) (same); *Brady v. United States,* 397 U.S. 742, 748 (1970) (right to trial by jury).

The Court also rejects the belated claim that Collins did not knowingly waive his right to have the issue of the type of narcotic proved beyond a reasonable doubt. During the plea colloquy, quoted at length earlier, the Court carefully explained to Collins that he had the right to have the issue proved by that standard, closing with the specific and unambiguous admonition that the government "will have to prove simply that it is more likely than not that the substance was crack, and they won't have to prove it beyond a reasonable doubt." When the Court asked Collins whether he understood this, he unequivocally said that he did. Tr. May 5, 2005 at 13-14. Under the circumstances, the unsupported contention of counsel that Collins "was misinformed and [that] his waiver of the standard of proof was not knowingly made," Collins Suppl. Mem. at 3, simply does not hold water. Collins' waiver of the reasonable doubt standard was knowing and intelligent and was made with awareness of the circumstances and possible consequences. *See Brady,* 397 U.S. at 748.

The Court therefore proceeds to discuss the evidence presented at the hearing. The government offered a tape recording of a conversation between Collins and an informant in which arrangements were made for the purchase of narcotics. The recorded conversation

5

reflected that the informant asked to purchase, and Collins agreed to sell, crack cocaine. Following that meeting and other, later meetings between Collins and the informant at which money and suspected narcotics were exchanged, government agents recovered quantities of a substance that they said, based on their training and experience, had the appearance (color and texture) and smell of crack cocaine. One of the agents admitted on cross examination that crack cocaine can vary in color, and another testified that powder cocaine, like crack cocaine, can be chunky in texture

The government also called Heather Miller, a Drug Enforcement Administration forensic chemist with a doctorate in analytical chemistry who had analyzed the substances recovered following the three transactions at issue. Miller testified that there are three distinct substances that fall under the heading of "cocaine base": coca paste, the substance produced during the extraction of cocaine from coca leaves; "freebase" cocaine, a substance produced by dissolving powder cocaine in water and adding a base (such as ammonia) until a precipitant is produced, which in turn is dissolved in ether and filtered out; and crack cocaine, the street term for a substance produced by mixing powder cocaine with a base (usually sodium bicarbonate) and water, and then applying heat. Miller said she had never had an occasion to test or work with coca paste or freebase cocaine.

On cross examination, Miller testified that there is no chemical distinction between "cocaine base" and crack cocaine – in other words, both have the same chemical formula. She also testified that she would not rely on visual inspection or smell to conclude that a particular substance was cocaine base.

Miller testified that it is possible to find traces of sodium bicarbonate in samples of crack

6

cocaine. This occurs when too much sodium bicarbonate is used in the preparation process and not all of it is used up in the reaction. If, however, the correct proportions are used, no trace of sodium bicarbonate will be found in the end product. Miller testified that each of the three samples she tested included "cocaine base" and that each tested negative for sodium bicarbonate.

Collins called Michael Evans, who has a doctorate in toxicology and has testified in a number of federal criminal cases on the subject of identification of crack cocaine. Evans explained the differences between powder cocaine, freebase cocaine, and crack cocaine. Powder cocaine (cocaine hydrochloride) is water soluble and is not volatile; it is injected or inhaled, but not smoked. Freebase cocaine is prepared by dissolving powder cocaine in water and adding a base (such as sodium hydroxide). The resulting substance is dissolved in ether and then is desiccated to produce freebase, an extremely volatile substance which is smoked. Crack cocaine is made by mixing powder cocaine with sodium bicarbonate and adding water, and heating the mixture. Evans testified that crack can be distinguished from other forms of cocaine base by the presence of bicarbonate and also by the fact that when burned, a crackling sound can be heard.

Evans testified that Miller's laboratory reports did not establish that the substances she tested were crack cocaine, as there was no indication of the presence of bicarbonate. Evans stated that it is not possible for all the sodium bicarbonate used in making crack cocaine to be used up in the preparation process and thus that the absence of bicarbonate in a particular substance means that it is not crack cocaine. Evans, like Miller, testified that determination of whether a particular substance is crack cocaine cannot be made by visual inspection or smelling; indeed, he testified, the odor of crack (in and of itself, as distinguished from other substances mixed in with it) is not different from that of other forms of cocaine base.

7

On cross examination, Evans admitted that he does not have a doctorate in chemistry (though his undergraduate degree was in chemistry and biology) and that he had not analyzed the substances at issue in this case. He also agreed that crack cocaine is not chemically distinguishable from other forms of cocaine base. Evans also testified that crack cocaine can vary in color and texture.

Neither Miller's nor Evans' testimony entirely made sense to the Court. The predicate for Miller's testimony was that the person(s) who made the substances tested somehow managed to use precisely the exact amount of sodium bicarbonate needed to make crack cocaine, without any excess. In view of the fact that the alleged crack was being produced by amateurs without chemical degrees not working in a laboratory, this seems extraordinarily unlikely. *Cf. United States v. Waters,* 313 F.3d 151, 153 (3d Cir. 2002) (quoting the testimony of a DEA chemist to the effect that "traditionally, what we find is that out on the street an excess of this bicarbonate is used in the conversion," thus leaving traces in the tested sample). Evans' references to "bicarbonate" likewise did not entirely make sense to the Court; from the Court's relatively rudimentary understanding of chemistry, "bicarbonate" molecules (as distinguished from sodium bicarbonate) do not exist in a solid form. But the government offered no testimony, during its case in chief or in rebuttal, to attempt to refute Evans' testimony from a chemical standpoint.

As the Seventh Circuit recently stated, "[a]ll crack is cocaine base but not all cocaine base is crack." *United States v. Edwards,* 397 F.3d 570, 571 (7th Cir. 2005). Though the statute under which Collins was prosecuted criminalizes distribution of cocaine base, the Seventh Circuit has held that in enacting the statute, Congress intended "cocaine base" to mean only crack cocaine, not other forms of cocaine base. *Id.* at 571-72; *see also, United States v. Booker,* 70 F.3d 488,

8

494 (7th Cir. 1995). The same is true of the corresponding provision of the Sentencing Guidelines. *Id.* at 571; *see* U.S.S.G. § 2D1.1(c), application note D. The government is required to prove, in this case by a preponderance of the evidence, that the substance Collins distributed was crack.

Though the Sentencing Guidelines refer to crack as being commonly prepared using sodium bicarbonate, the Seventh Circuit has held that this does not require the government to show that sodium bicarbonate was used in the production of a particular substance. *United States v. Abdul,* 122 F.3d 477, 479 (7th Cir. 1997). But the crux of Evans' testimony was that unless traces of a base that can be used to produce crack are found in the sample, the sample is not crack. The government's evidence identified no other substance that the evidence showed could be used to produce crack. Miller's analyses detected the presence of nicotinamide, but neither she nor any other government witness testified that crack can be made by using this substance in lieu of sodium bicarbonate or some other form of bicarbonate. The government does not contend that the presence of nicotinamide satisfies Evans' requirement of trace amounts of a substance used to make crack or is otherwise indicative that the substance tested was crack cocaine.

The Third Circuit held in *Waters* that "it is *not* necessary for the government to show that a substance contains sodium bicarbonate in order to demonstrate by a preponderance of the evidence that the drugs in question are crack cocaine." *Waters,* 313 F.3d at 155 (emphasis in original). The court has also held a "'precise chemical analysis is not necessary to prove that cocaine base is crack under the Sentencing Guidelines.'" *Id.* (quoting *United States v. Dent,* 149 F.3d 180, 190 (3d Cir. 1998)). But in *Waters,* the only testimony presented was that of the government agents and chemist; there was no countervailing scientific testimony such as that

9

offered by Evans.

It is also true that "testimony of witnesses familiar with crack, combined with direct evidence that the substance had the appearance of and was packaged like crack, is sufficient to satisfy the government's burden of proof." *United States v. Linton,* 235 F.3d 328, 330 (7th Cir. 2000). But in *Linton* and similar cases, the defendant presented no countervailing chemical evidence. In this case, evidence was presented from a qualified expert who testified unequivocally that the government's testing did not prove the presence of crack. The testimony of the government agents was considerably less than airtight, given the admission that there is variation in the appearance of both crack and powder cocaine, and Evans' testimony regarding the lack of a distinctive odor for crack. And even though there is no doubt that the informant negotiated to buy, and Collins negotiated to sell, crack cocaine, their agreement to deal in that substance is far less than conclusive. It is not at all uncommon for sellers of illicit drugs to defraud buyers about what they are buying; the sale of such substances is closely related to the narcotics trade, which is one reason why a number of states ban dealing not just in listed narcotics but also "look-alike" or counterfeit substances." *See, e.g.,* 720 ILCS 570/407.

In sum, though the evidence in this case is close, it is insufficient to sustain the government's burden of proof.

## Conclusion

The Court finds that the government failed to sustain its burden of proving that Collins distributed crack cocaine, as opposed to some other form of cocaine base. Collins will therefore be sentenced pursuant to the statutory minimums and maximums that apply when the substance

distributed is a form of cocaine other than crack.

        /s/ Matthew F. Kennelly
    MATTHEW F. KENNELLY
    United States District Judge

Date: October 11, 2005